CONSUMERS PETROLEUM OF CONNECTICUT, INC. *v.*
ALVIN DUHAN

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1266

Argued June 30 – decided September 3, 1982

*Albert J. Barr,* for the appellant (defendant).

*Henry Lyons III,* for the appellee (plaintiff).

DALY, J.  The plaintiff instituted this action in summary process to recover possession of three bays in a service station located on Route 7 and Pickett District Road in New Milford.  By way of special defense, the defendant asserted that the relationship between the parties was a franchise and, therefore, summary process would not lie.  The trial court rendered judgment in favor of the plaintiff from which the defendant has appealed to this court.

The trial court found the following facts:  The parties entered into a written lease for a service station dated January 29, 1965, which provided that the lease should remain in effect from March 1, 1965, to February 28, 1966, and thereafter the tenancy would be from month to month.  On the same date the parties executed a sales agreement whereby the defendant would sell Texaco products distributed by the plaintiff.  Upon termination of the lease on February 28, 1966, the parties commenced a month to month lease of the entire service station.

On January 10, 1976, the defendant, because of gasoline shortages and problems with his employees, entered into an agreement with Friendly Service Stations, Inc., the plaintiff's subsidiary.  The agreement

provided that Friendly would handle the retail sale of gasoline and occupy that portion of the premises devoted to gasoline sales, while the defendant would retain three bays in the station for his car repair business and would pay the rental for these bays on a month to month basis. The plaintiff has not received the rent for the bays since November 1980. The court found the elements of a franchise agreement between the parties to be lacking and rendered judgment for the plaintiff to recover possession of the three bays.

On appeal the defendant claims that the trial court erred in the following respects: (1) in concluding that the relationship between the parties was that of landlord and tenant rather than franchisor and franchisee; (2) in failing to find that the plaintiff had not complied with the provisions of the federal Petroleum Marketing Practices Act; 15 U.S.C. §§ 2801 through 2841 (1978 Sup.); and the Connecticut franchise statutes pertaining to notice of termination or nonrenewal; General Statutes §§ 42-133f and 42-133l; and (3) in finding the defendant to be in arrears on rent owed or gasoline purchased.

The first issue we consider is the relationship between the parties. The defendant contends that it was one of franchisor-franchisee rather than that of landlord-tenant.

A "franchise" is defined as "an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor . . . and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisors trademark . . . ." General Statutes § 42-133e (b). The question we must resolve is whether such a marketing plan or system is present in the case before us.

According to the lease, the monthly rent was based on the number of gallons of gasoline sold with a minimum rent of $400 per month. The station was not to be closed for a period in excess of 48 hours. The hours of operation were 6:30 a.m. to 9:30 p.m. daily except Sunday when the opening hour was 8 a.m. The defendant was to provide the necessary number of employees to run the buisness. No advertising signs were to be placed on said premises without the permission of the plaintiff. The sales agreement provided, inter alia, that the plaintiff would lend certain equipment to the defendant to be used for storing and dispensing products sold by the plaintiff only.

A review of the cases wherein a franchise relationship was found to exist leads us to conclude that these factors alone are insufficient to sustain a finding that there was a marketing plan or system present in the case before us. In *Atlantic Richfield Co.* v. *Razumic,* 480 Pa. 366, 390 A.2d 736 (1978), the agreement provided that in addition to the above factors, the lessor could audit the lessee's books and inspect the station to assure compliance with the terms of the agreement. Moreover, the lessee was required to keep the premises illuminated at certain times and the employees were required to wear uniforms prescribed by the lessor. Similarly, in *Arnott* v. *American Oil Co.,* 609 F.2d 873 (8th Cir. 1979), cert. denied, 446 U.S. 918, 100 S. Ct. 1852, 64 L. Ed. 2d 272 (1980), the lessor reserved the right to set prices, to inspect the premises and to compel the purchase of green stamps. Finally, in *Shell Oil Co.* v. *Marinello,* 63 N.J. 402, 307 A.2d 598 (1973), cert. denied, 415 U.S. 920, 94 S. Ct. 1421, 39 L. Ed. 2d 475 (1974), the lessor controlled the prices at which fuel could be sold and refused to allow the dealer to lower them during a local price war.

Other factors which are relevant in determining whether a franchise relationship exists are: whether the lessor hires the employees; whether sales quotas

are established; and whether it provides management training and financial support. See 21 Am. Jur. Trials, Franchise Litigation § 27. None of these factors is present in the case before us. Accordingly, the trial court did not err in concluding that the relationship between the parties was that of landlord and tenant.

Having found that there was no franchise agreement between the parties, we need not consider the second claim of error raised by the defendant.

The sole remaining issue is whether the trial court erred in finding that the defendant owed an arrearage to the plaintiff of approximately $10,000 for rent and gasoline purchases. The court was presented with conflicting testimony as to the appropriate rental figures to use in calculating the arrearage.

It is the province of the trier of fact to weigh the evidence presented and to determine the credibility and effect to be given the evidence. On appeal, therefore, we will give the evidence the most favorable reasonable construction in support of the judgment to which it is entitled. *Swift & Co.* v. *Rexton, Inc.,* 187 Conn. 540, 543, 447 A.2d 9 (1982). Viewed within these principles, the evidence amply supports the trial court's judgment.

There is no error.

In this opinion BIELUCH and COVELLO, Js., concurred.