**HYDRO AIR OF CONNECTICUT, INC., Plaintiff,**

v.

**VERSA TECHNOLOGIES, INC. and Power Draulics-Nielsen, Inc., Defendants.**

**Civ. No. N–81–145 (WWE).**

United States District Court, D. Connecticut.

Oct. 31, 1984.

---

See also, D.C., 99 F.R.D. 111.

Donald Lunt, Fay & Lunt, Wallingford, Conn., for plaintiff.

Shaun S. Sullivan, Wiggin & Dana, Mark R. Kravitz, New Haven, Conn., Scott W. Hansen, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for Versa Technologies.

John Callagy, New York City, Taggart D. Adams, Kelley, Drye & Warren, Stamford, Conn., Paul Barenholtz, Kelley, Drye & Warren, New York City, for Power Draulics-Nielsen.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

EGINTON, District Judge.

Plaintiff is engaged in the business of selling hydraulic and pneumatic systems and components in the New England states. It alleges that the defendant Versa Technologies, Inc., through its Milwaukee Cylinder division (hereinafter "Milwaukee"), unlawfully terminated plaintiff as an authorized distributor/representative of Milwaukee products. Both defendants have filed motions for summary judgment dismissing plaintiff's claim. Defendant Power Draulics-Nielsen, Inc. (hereinafter "PDN") has also moved for summary judgment on its counterclaim.

Summary judgment should not be improvidently granted, especially in an antitrust case. Reversal of an imprudent grant of summary judgment in defendants' favor would delay the start of plaintiff's trial. Nevertheless, legal issues which may be resolved short of trial should be decided. In order to prevail on a motion for summary judgment, the movant must show that there is no genuine issue of material fact and that judgment should be entered as a matter of law. *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir.1979). Therefore, the court is permitted pursuant to Fed.R.Civ.P. 56(d) to ascertain those material facts which are not substantially controverted and to determine those questions of law dependent upon uncontroverted facts.

In August 1972, plaintiff was authorized to act as Milwaukee's exclusive sales agent in southern Connecticut. Occasionally plaintiff purchased Milwaukee products from Milwaukee Cylinder as a distributor for resale. It is alleged that in 1979 Milwaukee authorized plaintiff to sell Milwaukee products throughout the entire state of Connecticut, thereby allowing plaintiff to

compete with another distributor/representative, Fluid Kenetics. It is undisputed that on December 3, 1980, Milwaukee notified plaintiff that it would be terminated effective January 3, 1981. Apparently Fluid Kenetics was terminated also by Milwaukee. In their place, Milwaukee appointed defendant PDN as its exclusive distributor/representative in New England. For a period of time, plaintiff was able to place orders for Milwaukee products through a Milwaukee dealer in New York, but incurred a substantial reduction in profits.

Plaintiff claims the defendants violated Section 1 of the Sherman Act, sections 35–26, 35–27, and 35–28 of the Connecticut Anti-Trust Act, and the Connecticut Unfair Trade Practices Act. In addition, it is alleged that Milwaukee violated the Connecticut Franchise Act and the covenants of good faith and fair dealing. PDN is alleged to have intentionally and improperly interfered with plaintiff's business relations.

By counterclaim, PDN argues that plaintiff instituted its action for the purpose of harassment, in the absence of a colorable claim, with malice and without probable cause. Summary judgment is requested for the defendants on both the complaint and the counterclaim. For the reasons set forth below, the Motions for Summary Judgment are denied.

## FEDERAL ANTITRUST

■ In count I of its complaint, plaintiff claims that the defendants entered into a conspiracy in violation of Section 1 of the Sherman Act to terminate plaintiff as Milwaukee's representative/distributor and to appoint PDN as Milwaukee's representative for New England. Defendants have moved for summary judgment on the basis that the mere substitution of sales agents does not violate antitrust law. *Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283 (6th Cir.1963). This is a correct assessment of the law, but plaintiff is alleging more than mere substitution. Where a refusal to deal is not unilateral but is prompted by an understanding with other parties, there may be an antitrust violation. *Cernuto, Inc. v. United Cabinet Corp.,* 595 F.2d 164, 168 (3rd Cir.1979). Plaintiff is alleging a vertical restraint, i.e., a combination of persons at different levels of the market structure, such as one between manufacturers and distributors. *Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126, 131 (2d Cir.), *cert. denied* 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338, *rehearing denied* 439 U.S. 1104, 99 S.Ct. 883, 59 L.Ed.2d 65 (1978). Vertical restrictions are not *per se* violations of the Sherman Act, when the alleged agreement is an exclusive distributorship. *Id.* Plaintiff was Milwaukee's sole representative in southern Connecticut. *See* Exhibit B to the complaint.

The "rule of reason" test must, therefore, be applied. The alleged agreement between Milwaukee and PDN is violative of section 1 of the Sherman Act only if it is anticompetitive in purpose or effect. *Oreck Corp.,* 579 F.2d at 126.

Plaintiff claims that it has been deprived of the Milwaukee product line, which it cannot effectively replace. *See* Gaudet Affidavit of Aug. 24, 1984 at 4. It is contended that because 40% of plaintiff's customers in the Connecticut area were purchasing Milwaukee products and these customers accounted for 80% of plaintiff's total sales, plaintiff lost sales not only of Milwaukee cylinders, but also of other products as well. Complaint, ¶ 37; Gaudet Affidavit of Aug. 24, 1984 at 4.

■ Plaintiff argues that one of the purposes of the conspiracy was to damage the ability of the plaintiff and of Fluid Kenetics to compete with PDN in the sale of other products. There is evidence that the competitors' cylinders were not met with the same level of acceptance from plaintiff's customers. Gaudet Affidavit of Aug. 24, 1984 at 4. In fact, plaintiff argues that because Milwaukee cylinders were the "Cadillac" of cylinders, there is no real competition at all. The facts are disputed on this issue. Milwaukee claims that there is not much difference between its cylinders and those of its competitor, Wabco. As evidence, it offered the deposition of

plaintiff's sales manager. Deposition of Pueschel, Sept. 30, 1981 at 33–34. Although the availability and price of Milwaukee products have not been affected, the market for other products may have been adversely impacted. *Westman Commission Co. v. Hobart Corp.*, 461 F.Supp. 627 (D.Colo.1978). Hence, there is a genuine dispute as to material facts and summary judgment may not be granted as to this issue.

■ In addition, plaintiff argues that Milwaukee terminated two dealers, both of whom were directly competing in the sale of Milwaukee products in northern Connecticut, and replaced them with one dealer, thereby eliminating intrabrand competition. There was apparently no written agreement authorizing plaintiff to sell Milwaukee products in northern Connecticut. However, plaintiff claims that an agreement was made. Complaint ¶ 23. Milwaukee has offered no evidence to dispute this. Suppression of intrabrand competition is lawful only if interbrand competition acts as a check on the exploitation of intrabrand market power. *Alladin Oil Co. v. Texaco, Inc.*, 603 F.2d 1107, 1116 (5th Cir.1979). Because there is a dispute as to whether there is any real interbrand competition, summary judgment is inappropriate at this time.

## CONNECTICUT ANTI–TRUST ACT

■ The Connecticut Anti-Trust Act, Conn.Gen.Stat. §§ 35–24–35–44, incorporates various provisions of the federal antitrust laws, especially § 1 of the Sherman Act. *Elida, Inc. v. Harmor Realty Corp.*, 177 Conn. 218, 226, 413 A.2d 1226 (1979). For the reasons stated in the previous section, summary judgment is denied as to count II of the complaint.

## THE CONNECTICUT UNFAIR TRADE PRACTICES ACT

■ Defendants Milwaukee and PDN have moved for summary judgment also as to count III of the complaint. Conn.Gen. Stat. § 42–110b, the Connecticut Unfair Trade Practices Act (CUTPA), provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 473 A.2d 1185 (1984) sets forth the required elements of proof under the Act. The plaintiff must establish either unfair methods of competition or unfair or deceptive acts or practices which have a potential effect on the general consuming public. A business person can maintain a CUTPA cause of action without showing consumer injury.

■ As noted in the *McLaughlin* opinion, Connecticut courts have adopted the Federal Trade Commission's "cigarette rule" as furnishing appropriate criteria by which to determine whether a given practice is unfair.

(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers (competitors or other businessmen). 192 Conn. at 568, 473 A.2d 1185.

Based upon the preceding sections of this opinion, the court finds that there is a material issue of fact as to whether the defendants' alleged conduct offended a public policy.

■ The defendants argue that CUTPA is inapplicable because there is no potential effect on the consuming public. Conn. Public Act 84–468 recently amended CUTPA so as to not require proof of public interest or public injury. However, the act takes effect from its passage. A statute affecting substantive rights is intended to apply prospectively only. *Nagle v. Wood*, 178 Conn. 180, 187, 423 A.2d 875 (1979). Thus, plaintiff must establish a potential

effect on the public. As previously discussed in the antitrust section of this opinion, there is a genuine issue of material fact concerning the effect of the defendants' alleged conduct on intrabrand and interbrand competition.

## THE CONNECTICUT FRANCHISE ACT

 In count IV of its complaint, plaintiff alleges that Milwaukee's termination of its agreement with plaintiff was a violation of the Connecticut Franchise Act, Conn. Gen.Stat. §§ 42–133e—42–133h. If a business relationship constitutes a franchise within the meaning of the Act, it may not be terminated except upon good cause and upon sixty days written notice. Defendants maintain that the Act is not applicable, because the relationship between plaintiff and Milwaukee was not than of a franchise.

Conn.Gen.Stat. § 42–133e(b) provides the definition of a franchise.

> "Franchise" means an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor ... and (2) the operation of the franchisee's business pursuant to such a plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate...

Milwaukee contends that it did not prescribe, in substantial part, a marketing plan for the plaintiff and that plaintiff's business was not substantially associated with its trade name.

The first question is whether plaintiff was granted the right to engage in offering, selling or distributing Milwaukee products under a marketing plan or system prescribed in substantial part by Milwaukee. It is undisputed that there was an agreement between plaintiff and Milwaukee whereby plaintiff was granted the right to act as Milwaukee's representative for the sale of Milwaukee products. In

*Consumers Petroleum of Connecticut, Inc. v. Duhan,* 38 Conn.Supp. 495, 452 A.2d 123 (1982), Judge Daly, writing for an appellate session of the superior court, set forth a number of relevant factors for this determination. They include whether the franchisor set the hours of operation, number of employees, and placement of advertising signs. In addition, it is relevant whether the franchisor hired the employees, provided the management training or offered financial support.

In a recent unreported decision of the United States District Court for the District of Connecticut, Judge Brieant, sitting as a visiting judge, recognized that many of these factors are relevant only to retail sales businesses. *Grand Light and Supply Co., Inc. v. Honeywell, Inc.,* Civ. Action No. N–78–342 (TFGD), slip op. at 23 (D.Conn. July 13, 1984). Because the defendant therein was obliged to hold management conferences, sales meetings and training seminars and to provide promotional assistance, the court concluded that the defendant prescribed the material elements of plaintiff's marketing plan for the sale of defendant's products.

 The case at bar is remarkably similar. Milwaukee offered training seminars, provided promotional and sales materials, established requirements concerning credit ratings, and set sales goals and forecasts. Milwaukee has not disputed these facts in its affidavits or depositions. The court, therefore, finds that Milwaukee did prescribe at least some elements of a market plan with respect to plaintiff's sale of Milwaukee products. It is for the trier of fact to determine whether it was prescribed in substantial part by Milwaukee.

The second issue is whether the operation of plaintiff's business pursuant to such a plan was substantially associated with Milwaukee's tradename. Milwaukee contends that the holding in *Muha v. United Oil Co.,* 180 Conn. 720, 433 A.2d 1009 (1980) prohibits a finding of substantial association. In *Muha,* the parties' agreements did not require the plaintiffs to sell only the defendant's products, and the

plaintiffs, in fact, derived most of their profits from other sales and services. Justice Healey stated that the plaintiff's activities were not substantially related with the defendant's trademark. *Id.* at 726, 433 A.2d 1009. However, it is recognized that this is mere dicta. The actual holding of the court was that there was no franchise because the defendant had no trademark or trade name of its own.

The *Grand Light* case considered the same unique issue presented herein: does the Connecticut Franchise Act apply to an authorized sales representative/distributor whose gross revenue from the sales of the alleged franchisor's products account for only 2% of its total income. *Grand Light*, slip op. at 16. Judge Brieant concluded that it did. He based his decision upon the absence of any Connecticut law otherwise and the plain meaning of the statute. Conn.Gen.Stat. § 42–133e(b) requires that the "operation of the franchisee's business *pursuant to such (marketing) plan or system*" be "substantially associated" with the franchisor's trademark or trade name (emphasis added). Although it is admittedly a difficult question, this court agrees with Judge Brieant's conclusion.

Because this is a diversity jurisdiction action with respect to count IV of the complaint, this court must apply the substantive law of the state of Connecticut under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Mere obiter should be entitled to little weight. *Nolan v. Transocean Airlines*, 290 F.2d 904 (2d Cir.), *cert. denied* 368 U.S. 901, 82 S.Ct. 177, 7 L.Ed.2d 96 (1961). Moreover, the statute requires that the business activities *relating to the market plan* be substantially associated with the franchisor's trademark or trade name. It does not require the plaintiff's entire business to be so associated. Indeed, the court can find no reason to exclude from the operation of the statute a business that acts as a franchisee for several franchisors.

Defendant Milwaukee has not disputed plaintiff's association with Milwaukee's trade name. Whether or not it is sufficient to constitute substantial association is a question for the trier of fact to determine. Summary judgment is, therefore, denied as to count IV.

## COVENANT OF GOOD FAITH

In counts V and VI of the complaint, plaintiff contends that defendant Milwaukee breached the covenants of good faith and fair dealing implied in the parties' contractual relationship and imposed by Conn. Gen.Stat. § 42a–1–203. Milwaukee has moved for summary judgment against the plaintiff as to these counts on the ground that neither a common law nor a U.C.C. good faith duty can override contract terms. In support thereof, Milwaukee has cited two cases which hold that a good faith obligation cannot be implied if it would be inconsistent with the express terms of the contract. *See Cardinal Stone Co., Inc. v. Rival Manufacturing Co.*, 669 F.2d 395 (6th Cir.1982); *Corenswet v. Amana Refrigeration, Inc.*, 594 F.2d 129 (5th Cir.), *cert. denied* 444 U.S. 938, 100 S.Ct. 288, 62 L.Ed.2d 198 (1979).

In *Corenswet*, the Court of Appeals for the Fifth Circuit recognized that courts have begun to read a good faith limitation into contracts. It declined to impose this limitation in *Corenswet* because there was no existing backdrop of Iowa state law supporting it. 594 F.2d at 137. *Cardinal Stone* expressly relies upon the *Corenswet* decision. 669 F.2d at 396.

Conn.Gen.Stat. § 42a–1–203 provides that "every contract or duty within this title imposes an obligation of good faith in its performance or indorsement." As a commercial agreement, the Hydro Air/Milwaukee contract is clearly governed by this provision. A Connecticut trial court has applied the identical provision contained in the Restatement (Second) of Contracts § 231 to an at-will employment contract. *Magnan v. Anaconda Industries, Inc.*, 37 Conn.Supp. 38, 429 A.2d 492, 494 (1980). There is, therefore, an existing body of Connecticut law supporting plaintiff's contention. Milwaukee's motion for

summary judgment is denied as to these counts.

## WRONGFUL INTERFERENCE WITH BUSINESS RELATIONS

By counts VII and VIII of its amended complaint, plaintiff claims that defendant PDN intentionally and improperly interfered with plaintiff's business relationship with Milwaukee. PDN argues that summary judgment is appropriate because plaintiff has failed to allege independent tortious activity.

PDN relies upon the case *Blake v. Levy*, 191 Conn. 257, 464 A.2d 52 (1983) for its contention that plaintiff must prove fraud, misrepresentation or intimidation. However, the *Blake* opinion goes on to state that "in an action for intentional interference with business relations, we think the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means." *Id.* at 262, 464 A.2d 52. Plaintiff has alleged that such conduct was intentional and improper. Amended Complaint, ¶ 43. An affidavit submitted by the plaintiff raises an inference that PDN's actions were motivated by a desire to increase its business at the expense of plaintiff. Affidavit of Gaudet, August 24, 1984, ¶ 6.

PDN argues that its conduct was not improper. However, in view of this court's determinations on the issues of the antitrust and unfair trade practice allegations, there are sufficient issues of disputed material facts to make summary judgment inappropriate on the counts of wrongful interference with business relations.

Defendant PDN's counterclaim is based upon plaintiff's alleged failure to establish a colorable claim. In view of this court's determination on the motions for summary judgment as to plaintiff's complaint, PDN's motion for summary judgment on the counterclaim is DENIED. Accordingly, all motions for summary judgment are DENIED.

SO ORDERED.