[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT PLEADING NO. 124
On June 20, 1990 plaintiff, hereinafter "Danby", instituted this action against defendant, hereinafter "U-Haul Co."
In its five-count second amended complaint, plaintiff alleges that it entered into a franchise agreement with U-Haul Co., the franchiser on August 4, 1987. On or about January 16, 1990, U-Haul Co. terminated the franchise. In counts one through CT Page 4045 five plaintiff claims that U-Haul Co.: (1) failed to provide timely notice of the franchise termination in violation of General Statutes 42-133f; (2) terminated the franchise without "good cause" in violation of General Statutes 42-133f; (3) breached the parties contract in not providing notice of the franchise termination pursuant to the contract terms; (4) breached an implied covenant of good faith and fair dealing in terminating the franchise without notice of good cause; and (5) violated General Statutes 42-110b, CUTPA, in terminating the franchise without notice or good cause and breaching the implied covenant of good faith and fair dealing. Plaintiff seeks damages, interest and costs, attorney fees, and punitive damages.
The defendant, U-Haul Co., denied the agreement between the parties was a franchise agreement.
The plaintiff moves for summary judgment on count one of its amended complaint.
In support of summary judgment, plaintiff asserts that the agreement between plaintiff and defendant was a franchise as defined by General Statutes 42-133e(b). In opposition, the defendant asserts that there was outstanding discovery requests which defendant needs answered in order to oppose the plaintiff's motion. In the alternative, defendant asserts that the plaintiff's marketing plan or system was not "prescribed in substantial part" by the defendant and as such was not a franchise as defined in General Statutes 42-113e(b).
Section 42-133e(b) defines a franchise as follows:
 "Franchise" means an oral or written agreement or arrangement in which (1) a franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchiser, provided nothing contained herein shall be deemed to create a franchiser-franchisee relationship between the grantor and grantee of a lease, license or concession to sell goods or services upon or appurtenant to the premises of the grantor, which CT Page 4046 premises are occupied by the grantor primarily for its own independent merchandising activities; and (2) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisers' trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchiser or its affiliate, and includes any agreement between a manufacturer, refiner or producer and a distributor, wholesaler or jobber, between a manufacturer, refiner or producer and a retailer, or between a distributor, wholesaler or jobber and a retailer;. . .
Although the parties have filed numerous documents in support of their respective positions, the court may not consider most of the documents in that, inter alia, they are uncertified, and not sworn to as required by the Practice Book, Sec. 381. The plaintiff filed an unsigned affidavit which also may not be considered by the court. Irrespective of the parties' failure to follow the pertinent Practice Book Rules, the court has considered: (1) the terms of the contract (Defendant's Exhibit A, Plaintiff's Exhibit A); (2) the terms of the Dealer Operations Manual (Defendant's Exhibit K, Plaintiff's Exhibit E); and (3) the letter of defendant offering liability insurance to the plaintiff (Defendant's Exhibit H, Plaintiff's Exhibit K) in that the parties do not dispute the terms of these documents. The court has considered the affidavits of Kevin Platt (Plaintiff's Exhibit G), Alan J. Sobol (Defendant's Exhibit D), and Gary G. Larivee (Defendant's Exhibit E) since the affidavits were executed with the requisite formalities.
The contract provides that defendant will furnish rental equipment, supplies and instructions to plaintiff to operate a U-Haul Dealership and will pay plaintiff a commission on all rentals. In return for the dealership, plaintiff must: (1) permit defendant to review any advertisement using the name U-Haul; (2) read and comply, and train all employees to comply, with all U-Haul maintenance and hookup procedures, manuals, bulletins, user guides and programs, (3) use U-Haul contacts; (4) permit defendant at any reasonable time to audit, inspect, repair CT Page 4047 or remove U-Haul accounting records, equipment, supplies and property; (5) hold all funds in trust for defendant; (6) report rental transactions and inventory weekly; (7) pay a monthly non-refundable service fee from commissions; and (8) notify defendant prior to change in location, or sale or transfer of the business. The Dealer Operations Manual defines U-Haul dealers as "independent business people."
In support of its motion for summary judgment plaintiff filed the affidavit of Ken Platt, President of defendant U-Haul Company of Connecticut, from the year 1985 to 1989. Platt avers that while he was President of U-Haul, dealers were required to: use U-Haul lease forms, follow U-Haul's inventory control program, follow to the extent possible U-Haul's pricing schedules, submit to field audits, maintain standards of cleanliness and presentation, and submit to financial audits. Platt further avers that in his opinion there was a marketing plan in existence during his tenure as President.
In opposition to the motion for summary judgment, defendant filed the affidavit of Alan J. Sobol, attorney for defendant U-Haul Co. of Connecticut. In his affidavit Sobol states that there are outstanding discovery requests which concern issues relevant to this motion for summary judgment, namely, what portion of plaintiff's business constitutes the operation of a U-Haul dealership. Sobol avers that "the plaintiff operated various business entities interchangeably as part of its overall business operations including its U-Haul dealership, and that the U-Haul dealership did not rise to the level of elemental substantial association as required by the Connecticut Franchise Act." Sobol avers that without completing discovery defendant cannot adequately and wholly present sufficient facts to oppose plaintiff's motion.
Defendant also filed the affidavit of Gary G. Larivee, President of U-Haul Company of Connecticut. In his affidavit Larivee avers that defendant U-Haul is not a franchiser in that it does not require a dealership financial investment, it does not supervise or control dealership employees, it does not require dealership employees to wear U-Haul uniforms or logos, and it permits great latitude in dealer advertising and advertising expenditures. Larivee further states that plaintiff operated at least six additional businesses at the same location as its U-Haul business. Larivee further avers that the contract between plaintiff and defendant grants a nonexclusive limited CT Page 4048 license to use the trademark and name "U-Haul" in connection with plaintiff's dealership. Larivee further avers that the handbooks and manuals provided to dealers are guidelines and suggestions and do not constitute a marketing plan or system.
Plaintiff cites several Connecticut District Court cases to support its contention that plaintiff was permitted to lease defendant's equipment pursuant to a marketing plan or system prescribed in substantial part by the defendant. While these cases provide a laundry list of elements cited by those courts in identifying a franchise, none of those cases fit the facts of the present case. A Second Circuit case appears to be dispositive of the present motion for summary judgment.
In Grand Light Supply Co., Inc. v. Honeywell, Inc.,771 F.2d 672 2d. Cit. (1985), the court held that a franchise relationship did not exist where less than three percent of the plaintiff's sales were of defendant's products. Id., 678. The court noted that the purpose of Connecticut's Franchise Act is "to prevent a franchiser from taking unfair advantage of the relative economic weakness of the franchisee." Id., 677. The court held that because termination of the sales agreement would not result in economic disaster to the plaintiff, as would happen in an exclusive relationship, the purpose behind the Act did not come into play. Id.
The court in Grand Light also found that its decision was not inconsistent with the only Connecticut cases which construe General Statutes 42-133e(b), Muha v. United Oil Co., 180 Conn. 720,433 A.2d 1009 (1980)[1] and Consumers Petroleum of Connecticut, Inc. v. Duhan, 38 Conn. Sup. 495, 452 A.2d 123
(App. Sess. 1982).[2] Id.
In the present case defendant raises the same issue which the court in Grand Light addressed, whether the percentage of plaintiff's business comprising the leasing of defendant's equipment was large enough to constitute a franchise. There is insufficient evidence in the record going to this issue in that plaintiff has failed to answer defendant's discovery requests and defendant avers insufficient knowledge. This issue is intertwined with the issue of whether plaintiff's marketing plan or system was prescribed "in substantial part" by the defendant which is a question of fact. Accordingly, the court denies the plaintiff's motion for summary judgment. CT Page 4049
Frank S. Meadow State Trial Referee