**JEROME–DUNCAN, INC., Plaintiff,**

v.

**AUTO–BY–TEL, L.L.C., Auto–By–Tel Marketing Corp. and North Brothers Ford, Inc., Defendants.**

No. Civ.A. 97–40160.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 24, 1997.

Barris, Sott, Denn & Driker, P.L.L.C. by Sharon M. Woods, John A. Libby, Thomas F. Cavalier, Detroit, MI, for Plaintiff.

Howard & Howard Attorneys, P.C. by Thomas J. Tallerico, Patrick M. McCarthy, Douglas R. Kelly, Bloomfield Hills, MI, for Defendants.

*MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

The instant action is essentially a breach of contract case between plaintiff, Jerome–Duncan, Inc. ("JDI"), a Ford dealership located in Sterling Heights, Michigan and defendant, Auto–By–Tel ("ABT"), which operates a web site on the Internet through which it refers potential customers to various car dealers.[1] Before the court are two motions: Plaintiff JDI's motion to remand this case to state court and Defendant ABT's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or alternatively a motion for summary judgement pursuant to Fed.R.Civ.P. 56. For the reasons discussed below, this court will deny JDI's motion to remand and grant ABT's motion for summary judgment.

**Factual Background**

In June of 1996, JDI entered into a five year contract with ABT to be the exclusive dealer to which potential Ford customers in the counties of Wayne, Oakland, Macomb and Washtenaw would be referred. The contract gave each party the right to terminate the agreement on 30 days notice. Thereafter ABT requested to renegotiate the terms of the contract. JDI declined this offer. The instant complaint was originally filed in Macomb County Circuit Court on March 24, 1997, alleging breach of contract and seeking a declaratory judgment that the contract between JDI and ABT constituted a franchise agreement. By letter dated April 22, 1997, ABT gave notice that it was terminating the contract effective May 24, 1997. On May 13, 1997, JDI amended its state court complaint, as of right, to add North Brothers, a non-diverse defendant, as well as to add a claim for injunctive relief and specific performance. On May 14, 1997, ABT removed the instant

action without knowledge of the amended complaint. On May 19, 1997, JDI filed an expedited motion to remand to state court based on lack of diversity jurisdiction. On June 6, 1997, ABT filed a motion to dismiss under Rule 12(b)(6) or, alternatively, a motion for summary judgment under Rule 56.

**Discussion**

**1. JDI's Motion to Remand to State Court**

JDI asserts that this case should be remanded to state court because, at the time this case was removed to federal court, this court lacked subject matter jurisdiction due to the presence of a non-diverse defendant, North Brothers. However, because North Brothers was fraudulently joined, this court will deny JDI's motion.

■ The burden is on the removing party to show fraudulent joinder of a non-diverse defendant. *Freeman v. Unisys, Corp.*, 870 F.Supp. 169, 173 (E.D.Mich.1994). The Sixth Circuit has held that " '[t]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.' " *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apts., Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). The Sixth Circuit also provided that any disputed questions of fact and ambiguities in controlling state law should be resolved in favor of the non-removing party. *Id.* This court has stated the burden as follows: "A defendant must show that the plaintiff has no reasonable basis for a claim against the non-diverse defendant in state court based on the alleged facts." *Ludwig v. Learjet Inc.*, 830 F.Supp. 995, 998 (E.D.Mich. 1993). *See also Kelly v. Drake Beam Morin, Inc.*, 695 F.Supp. 354, 355 (E.D.Mich.1988). This is a heavy burden, but it is not an "absolute standard." That is to say, the defendant does not have to show that there is

---

**1.** There are actually three separate defendants. The first is Auto–By–Tel, L.L.C., a California corporation with whom JDI initially contracted and which was subsequently dissolved, and the second is its successor, Auto–By–Tel Marketing Corporation, a Delaware corporation. For purposes of the motions before the court, it is sufficient

that this court refer to these two defendants collectively as ABT. JDI has also named North Brothers Ford, Inc. ("North Brothers"), a Michigan corporation, as an additional defendant. JDI has submitted evidence that North Brothers is now receiving referrals from ABT in the area covered by the contract between JDI and ABT.

absolutely no basis for recovery. Rather, the inquiry is based on a reasonableness standard. *See Ludwig,* 830 F.Supp. at 998, n. 5.

█ Despite the heavy burden imposed on ABT in this case, this court finds that ABT has shown that JDI fraudulently joined North Brothers.

An examination of the complaint reveals that JDI does not assert any claims against North Brothers, nor does it seek any relief directly from North Brothers. Therefore, it is untenable for JDI to assert that it has some reasonable basis for recovery against North Brothers, as required for proper joinder. The sole basis for JDI's assertion that North Brothers is properly joined is an argument based on its claim for declaratory relief in the action against ABT.

JDI's argument can be summarized as follows: M.C.R. 2.605 provides, in relevant part, "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." In addition, M.C.R. 2.605(C) specifically provides, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in an appropriate case." JDI cites this language as providing for declaratory relief in this case, in conjunction with the other remedies available to it for breach of contract. JDI then asserts that Michigan law requires that all parties with an interest in the declaratory judgment are "indispensable" and therefore must be joined in the action. *See Allstate Ins. Co. v. Hayes,* 442 Mich. 56, 65–66, 499 N.W.2d 743 (1993) ("It is essential in an action for declaratory judgment that all parties having an apparent or possible interest in the subject matter be joined so that they may be guided and bound by the judgment."). It appears that North Brothers is now receiving referrals from ABT in the area allegedly covered under the contract between ABT and JDI which purports to make JDI the "exclusive" Ford dealer in that area, and

JDI argues that this gives North Brothers an interest in the declaratory judgment sought in this case requiring that they be joined.

JDI's reliance on this justification for joining North Brothers is misplaced. First, while JDI is correct that Michigan law provides that the existence of another remedy does not preclude declaratory relief, a close examination of Michigan courts' interpretations of the policies and goals of declaratory relief suggests that this case would not be an appropriate case for such relief. According to the Michigan Supreme Court, "[t]he purpose of a declaratory judgment is to enable the parties to obtain an adjudication of their rights *before* actual injuries or losses have occurred." *Coalition for Human Rights v. D.S.S.,* 431 Mich. 172, 191, 428 N.W.2d 335 (1988) (emphasis added). In addition, "[t]he declaratory judgment rule was intended and has been liberally construed to provide a broad, flexible remedy with a view to making the courts more accessible to the people." *Shavers v. Attorney Gen.,* 402 Mich. 554, 588, 267 N.W.2d 72 (1978). In another case, the Michigan Court of Appeals noted that the purpose of the declaratory judgment "is to enable parties, in appropriate circumstances of actual controversy, to obtain an adjudication of their rights before actual injury occurs, *to settle matters before they ripen into ... a breach of contractual duty ....*" *Skiera v. National Indem.,* 165 Mich.App. 184, 189, 418 N.W.2d 424 (1987) (emphasis added).

It appears that none of these policies and purposes are applicable in this case. ABT terminated this contract (properly or improperly) and has refused to perform under its terms. JDI seeks to redress an existing injury. This case has fully ripened into a breach of contract action, making a declaratory judgment action inappropriate. The question JDI seeks to have decided is whether this contract constitutes a "franchise agreement" under Michigan law. That question of contract interpretation can be fully decided in its action for breach of contract.[2]

---

2. Defendant ABT also cites two federal cases, *The Pantry, Inc. v. Stop–N–Go Foods, Inc.,* 777 F.Supp. 713 (S.D.Ind.1991), and *Newton v. State Farm Fire and Casualty Co.,* 138 F.R.D. 76

(E.D.Va.1991), as support for the proposition that if, a breach of contract claim will fully settle the dispute between the parties then a claim for declaratory relief is inappropriate in conjunction

Because the declaratory judgment claim is unnecessary given JDI's companion breach of contract claim, it would be improper to remand this case based solely on that claim.

Secondly, even if this court were to find that the claim for declaratory judgment should survive, the presence of North Brothers in this litigation is not required for North Brothers to be "guided and bound" by the judgment in this action. As discussed above, Michigan law provides that all parties with an interest must be included in declaratory judgment actions, but the cases JDI cites make clear that courts are primarily concerned that any judgment be *res judicata* with respect to all interested parties. *See Central High School Athletic Ass'n v. City of Grand Rapids*, 274 Mich. 147, 153, 264 N.W. 322 (1936); *Washington–Detroit Theatre Co. v. Moore*, 249 Mich. 673, 677, 229 N.W. 618 (1930). However, there is no legitimate worry that North Brothers will not be bound by a judgment in this case. If a court were to find that the contract provides that JDI is the "exclusive" Ford Dealer in the area covered by the contract, and that ABT is prohibited from entering into any referral agreements with any other Ford dealers in the area, then North Brothers will be prohibited automatically by implication from entering into such an agreement with ABT.

There is no reasonable basis for a claim against North Brothers in this case under Michigan law, and as a result, the joinder of North Brothers in this action is fraudulent. Therefore, because North Brothers may not be used to defeat diversity jurisdiction, the removal in this case was proper. Accordingly, this court will deny JDI's motion to remand.

## 2. ABT's Motion for Summary Judgment[3]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of

---

with the breach of contract claim. While this court finds no Michigan decision that expressly confronts this issue, the reasoning of these two cases seems consistent with Michigan law. *See Newton*, 138 F.R.D. at 79 (holding that "[w]hile the existence of another adequate remedy does not operate as a bar to declaratory relief, plaintiff's suit presents the type of factual questions more appropriately considered in the companion breach of contract portion of their complaint").

3. Although ABT's motion is framed as a motion for summary judgment or, alternatively, a motion to dismiss under Rule 12(b)(6), it is appropriately decided as a motion for summary judgment. Motions to dismiss under Rule 12(b)(6) are decided on the basis of the pleadings alone. *Davey v. Tomlinson*, 627 F.Supp. 1458, 1463 (E.D.Mich. 1986). All factual allegations are treated as true. *Janan v. Trammell*, 785 F.2d 557, 558 (6th Cir. 1986). Because the allegations contained in the amended complaint taken as true are sufficient to state a claim, and because the affidavits and other materials submitted by the parties are vital to the discussion *infra*, this court will decide this motion as a motion for summary judgment pursuant to Fed.R.Civ.P. 56.

the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see, also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

Here, a summary judgment is appropriate because the dispute before the court can be decided purely as a question of law. The parties do not dispute the underlying material facts and they do not dispute the terms of the agreement. The question before the court is how the agreement should be interpreted under the Michigan Franchise Investment Law, Mich.Comp.Laws Ann. §§ 445.1501, *et seq.* ("MFIL"). Specifically, the parties dispute whether their agreement is a "franchise agreement" under Michigan Law. Both parties agree that the contract provides that either party can terminate the agreement with or without cause upon 30 days written notice to the other party. In addition, both parties agree that such notice was given on April 22, 1997, by ABT, with termination to become effective May 24, 1997. If the MFIL does not apply, the terms of the contract will govern, and summary judgment for ABT will be appropriate. However, if the MFIL does apply, then the agreement may not be terminated except for good cause, regardless of any termination provision in the agreement. Because this court finds that the agreement is not a "franchise agreement" under Michigan law, summary judgment in favor of ABT is proper in this case.

Before turning to an examination of the language of the MFIL which sets out the requirements for a franchise agreement, this court notes two general considerations. First, the word "franchise" does not appear anywhere in the parties' agreement. While not dispositive, it is clearly probative of what type of agreement was reached. *See James v. Whirlpool Corp.*, 806 F.Supp. 835 (E.D.Mo. 1992) (applying the MFIL). Secondly, looking at the policy behind the MFIL, it seems clear that it was not intended to govern this type of transaction. The act was intended to remedy perceived abuses by large franchisors engaged in manipulating, coercing or lying to unsophisticated investor franchisees. *See* Michigan House Legislative Analysis, H.B.4203, August 2, 1974. JDI is the largest single Ford dealership in the Metro Detroit area, with yearly sales of over $130 million. It is clearly not the type of unsophisticated franchisee that the MFIL was designed to protect.

After examining the language of the MFIL and the interpretation of its terms by courts, this court finds that the agreement in this case is not a "franchise agreement."

The MFIL defines a "franchise agreement" as any agreement to which *all* of the following apply:

(a) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor.

(b) A franchisee is granted the right to engage in the business of offering selling, or distributing goods or services substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate.

(c) The franchisee is required to pay, directly or indirectly, a franchise fee.

Mich.Comp.Laws Ann. § 445.1502(3). The agreement between the parties in this case does not meet either of the first two requirements. As a result, the instant agreement is not a "franchise agreement" under the MFIL.

### a. The right to distribute goods under a marketing plan prescribed by the franchisor

JDI argues that ABT's website on the Internet creates a "virtual dealership" rather than acting merely as an advertising mechanism. JDI asserts that because the ABT website does not mention specific dealers (until after the customer has submitted a full request), customers view themselves as ABT customers, and JDI, by its participation, operates an ABT "virtual dealership" franchise. Also, JDI points to the specific guidelines given by ABT governing when customers can be contacted by the dealership, what the dealers should say in those encounters and the length of time that offers of prices must stay open. JDI asserts that these guidelines are evidence of a "marketing plan prescribed by" ABT. Other factors cited by JDI include the fact that a JDI executive was trained by ABT to be the "ABT representative," as well as the fact that ABT limited the territory from which JDI would receive referrals.

This court is unpersuaded by JDI's argument that these factors are evidence of a "franchise agreement." The cases upon which JDI relies where courts have found a "franchise" based on a "marketing plan prescribed by a franchisor" are distinguishable from the instant case in one very important respect. The goods or services in those cases were the goods or services of the purported *franchisor. See Vaughn v. Digital Message Sys. Corp.,* 1997 WL 115821, 1997 U.S.Dist. LEXIS 2798 (E.D.Mich. March 10, 1997) (involving an "On Hold Programming" system); *Hydro Air of Conn., Inc. v. Versa Tech., Inc.,* 599 F.Supp. 1119 (D.Conn.1984) (involving hydraulic and pneumatic systems and components); *Mon–Shore Mgmt., Inc. v. Family Media, Inc.,* 584 F.Supp. 186 (S.D.N.Y.1984) (involving advertising space in franchisor's magazine); *see also Sorisio v. Lenox, Inc.,* 701 F.Supp. 950 (D.Conn.1988), *aff'd* 863 F.2d 195 (2d Cir.1988) (involving luggage).[4] Here, the goods being sold are *Ford* cars, not Auto–By–Tel cars. JDI argues that the ABT customer manual urged JDI and other ABT customers to "sell the service." However, this encouragement refers to promoting the mechanism that will lead to the sale of Ford cars, which is the ultimate goal of the enterprise.

*Vaughn* offers a glimpse of what would have been necessary in this case to constitute a "franchise" under the MFIL. In *Vaughn,* the franchisee was in the business of selling the franchisor's system of programming telephones. A similar arrangement in this case would involve JDI creating ABT-style websites for customers so that those customers could refer future automobile buyers to automobile dealers. Here, JDI was selling cars, not the ABT system.

Because JDI was not engaged in the business of selling ABT products under a marketing plan prescribed by ABT, the first prong of the franchise definition is not satisfied in this case. As a result, the agreement is not a "franchise agreement" under the MFIL.

---

**4.** The cases from New York and Connecticut involve application of the New York and Connecticut franchise acts. The definitions of "fran-chise" under both acts are materially identical to the MFIL.

### b. Distributing goods or services substantially associated with the mark of the franchisor

Even if the first requirement were satisfied, the agreement in this case is still not a "franchise agreement" because JDI was not engaged in distributing goods or services substantially associated with the mark of ABT.

JDI asserts that ABT requires its subscribers to place the ABT logo on certain print advertisements, post an "authorized Auto–By–Tel dealer" sign in their showrooms, utilize the ABT logo on business cards, and assign titles to their employees such as "Auto–By–Tel Manager." JDI argues that these types of displays and designations associate the dealers with ABT's trade name sufficiently to satisfy the definition of "franchise" under the MFIL.

This court rejects this argument. JDI is still predominately associated with Ford. The car that is the subject of the sale to the potential customer bears the Ford mark. The use of the ABT logo, again, is merely a means of promoting the mechanism by which the ultimate sale of cars will be accomplished. The goods that JDI is distributing are not associated with ABT's mark or logo to an extent that would make JDI an ABT franchise.

Accordingly, this agreement is not a "franchise agreement" under Michigan law.[5]

### c. Other factors

This court also finds helpful a list of factors used by the Second Circuit to determine whether a relationship constitutes a "franchise." In *Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 678 (2d Cir. 1985), and *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1180 (2d Cir.1995),[6] the Second Circuit listed the following factors as significant: (1) franchisor control over hours and days of operation, (2) placing of signs adver-tising franchisor, (3) loans by franchisor of equipment, (4) franchisor auditing of franchisee's books, (5) franchisor inspection of franchisee's premises, (6) franchisor control over lighting at franchisee's place of business, (7) franchisor requiring the franchisee to wear uniforms, (8) franchisor control over the setting of prices, (9) franchisor issuing of sales quotas, (11) franchisor training of employees and (12) offer by franchisor of financial support.

It is clear that the vast majority of these factors are not present in this case. ABT does not control the hours and days of JDI's operation, and it does not control the physical plant on JDI's premises, other than to require that the ABT logo be displayed in one or two places. Further, ABT does not set the prices of the automobiles, and it does not issue sales quotas to its dealers. This list shows what the law contemplates when it uses the term "franchise." The key element is control over a large majority of the franchisee's day-to-day operations. Such control is not present in this case. As a result, the agreement between ABT and JDI is not a "franchise agreement" under Michigan law, and so the MFIL does not apply to this transaction.

As a result, this court will grant ABT's motion for summary judgment. The facts of the case as well as the terms of the agreement, which are not in dispute among the parties, make clear that this is not a "franchise agreement." Therefore, the terms of the agreement control, and because ABT complied with the termination provisions of the agreement, ABT is entitled to summary judgment in this case.

Accordingly, this court having reviewed the submissions of the parties, and being fully advised in the premises,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand is **DENIED.**

---

5. This court notes that JDI did pay a start-up cost of $3500, and was required to pay a monthly fee of $500 a month. This payment would likely constitute a franchise fee if this court were to find that the first two prongs of the definition were satisfied. However, because the agreement in this case does not meet the first two require-ments, the payment of this fee does not constitute a "franchise fee."

6. Again, these cases applied the Connecticut franchise law, which defines "franchise" in the same terms as the MFIL.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment, pursuant to Fed.R.Civ.P. 56 is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's complaint is **DISMISSED with prejudice.**

**SO ORDERED.**

### *JUDGMENT*

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiff, Jerome Duncan, Inc., take nothing in this action against defendants, and that its complaint be **DISMISSED** with prejudice.

**SO ORDERED.**